AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. 17- 122M |
| three cellphones, two hard drives, a Dell computer, a | ) |
| Presario laptop, a storage device and four memory cards | ) |
| seized on February 23, March 2, and March 9, 2017. | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ District of _____ Delaware _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. 5861(d) | Possession of Unregistered Firearms |
| 18 U.S.C. 922(g)(1) | Felon in Possession of Ammunition |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Christopher Popp, ATF Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____06/21/2017____

_____
*Judge's signature*

City and state: __Wilmington, Delaware__

Hon. Sherry R. Fallon, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF THE                                    :
SEARCH OF:                                              :
                                                        :        MISC.  NO.  _____
One (1) Black ZTE Model Z833 Cell Phone                 :
Serial Number 325166771611                              :
IMEI: 862147031754563                                   :
FCC ID: SRQ-Z833                                        :
                                                        :
Black Cricket Alcatel Onetouch Cell Phone               :
Unknown Serial Number with a Chrome-                    :
Colored Unremovable Battery                             :
                                                        :
One (1) Black TracFone Wireless Cell Phone              :
Serial Number: 014526008991059                          :
FCC ID: RAD527                                           :
                                                        :
One (1) Silver Dell Dimension E510 Computer             :
Serial Number: 3FSWBB1                                   :
                                                        :
One (1) Western Digital 2.0 TB Hard Drive               :
Serial Number WCAVY1428274                              :
Model Number: WD2002FYPS-01U1B1                          :
                                                        :
One (1) Magnetic Data Technologies                      :
400.0 GB Hard Drive                                     :
Serial Number MCAS84004172                              :
Model Number MD04000-BJDW-RD                             :
                                                        :
One (1) Black Infinitive High Performance               :
SDHC 16.0 GB Memory Card                                :
                                                        :
One (1) Black Compaq Presario laptop                    :
Serial Number: CNF021158Z,                              :
                                                        :
One (1) Black WD Passport Storage Unit                  :
Identification Card Absent, and                         :
                                                        :
Three (3) SIM Cards.                                    :

## S E A R C H   W A R R A N T   A F F I D A V I T

Your Affiant, Christopher W. Popp, Task Force Officer (TFO), being duly sworn, deposes and

states as follows:

1

## **INTRODUCTION AND TASK FORCE OFFICER BACKGROUND**

1.  I am a sworn member of the Delaware State Police and have been such since October 16, 1998. I've been assigned to the Bureau of Alcohol, Tobacco and Firearms as a Task Force Officer in Wilmington, Delaware for approximately 3 years.

2.  As part of my duties, responsibilities and training, and in the course of my investigative experience, I have become familiar with the statutes, rules and regulations, policies and procedures, relating to the Bureau of Alcohol, Tobacco and Firearms, including but not limited to the regulation and sales of firearms by Federally Licensed Firearms Dealers, and other laws enforced by the Bureau of Alcohol, Tobacco and Firearms.

3.  I have been involved in the investigation of approximately 100 cases involving firearms violations at the State and Federal level. I have participated in the seizure of approximately 1000 firearms and thousands of rounds of ammunition. I have attended training provided by the ATF, FBI, DEA, US Attorney's Office, Delaware State Police, and local police departments regarding firearm investigations.

4.  The facts set forth in this affidavit are based upon Your Affiant's personal knowledge obtained during his participation in this investigation, review of documents, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a search warrant, this affidavit does not set forth each and every fact learned by me or other agents during the course of this investigation.

5.  This affidavit is submitted in support of an Application for a Search Warrant to search the contents of the following electronic devices:

    a.  One (1) Black ZTE Model Z833, Serial Number 325166771611, IMEI:862147031754563, FCC ID: SRQ-Z833, located on and seized from the floor of the kitchen closet on February 24, 2017 at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a Justice of the Peace Search Warrant dated February 23, 2017;

    b.  One (1) Black Cricket Alcatel Onetouch Cell Phone, Unknown Serial Number with a Chrome-Colored Unremovable Battery, located and seized from the living room table

2

at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a Justice of the Peace Search Warrant dated February 23, 2017;

c.  One (1) Silver Dell Dimension E510 Computer, Serial Number 3FSWBB1, located and seized from the rear master bedroom at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a Justice of the Peace Search Warrant dated February 23, 2017;

d.  One (1) Western Digital 2.0 TB Hard Drive, Serial Number WCAVY1428274, Model Number: WD2002FYPS-01U1B1, located and seized from the front bedroom at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a Justice of the Peace Search Warrant dated February 23, 2017;

e.  One (1) Magnetic Data Technologies 400.0 GB Hard Drive, Serial Number MCAS84004172, Model Number MD04000-BJDW-RD, located and seized from the front bedroom at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a Justice of the Peace Search Warrant dated February 23, 2017;

f.  One (1) Black Infinitive High Performance SDHC 16.0 GB Memory Card, located and seized from the front bedroom at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a Justice of the Peace Search Warrant dated February 23, 2017;

g.  One (1) Black TracFone Wireless Cell Phone, Serial Number: 014526008991059, FCC ID: RAD527, seized on March 2, 2017 from a 1992 Acura TL bearing VIN #JH4KA766XNC034820 pursuant to a United States District Court, District of Delaware, Search Warrant dated March 2, 2017;

h.  One (1) Black Compaq Presario laptop, Serial Number: CNF021158Z, located    and seized from the master bedroom at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to United States District Court for the District of Delaware search warrant issued by Magistrate Sherry R. Fallon on March 9, 2017;

i.  One (1) Black WD Passport Storage Unit, Identification Card Absent, located and seized from behind the television screen in the master bedroom at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a United States District Court for the District of Delaware search warrant issued by Magistrate Sherry R. Fallon on March 9, 2017; and

3

j.   Three (3) SIM Cards located in a brown box in the front bedroom at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a United States District Court for the District of Delaware search warrant issued by Magistrate Sherry R. Fallon on March 9, 2017 (herein, collectively, the "TARGET ELECTRONIC DEVICES").

6.   The TARGET ELECTRONIC DEVICES were found in the home, 822 Cobble Creek Curve, and car, 1992 Acura TL with VIN #JH4KA766XNC034820, belonging to Drew Chicklo.  On March 7, 2017, Chicklo was indicted by Grand Jury for Possession of Unregistered Firearms in violation of 26 U.S.C. §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c), and Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).  Chicklo is the sole, full-time occupant of the home.

7.   The TARGET ELECTRONIC DEVICES seized pursuant to the February 23, 2017 Justice of the Peace Search Warrant for 822 Cobble Creek Curve, listed above in Paragraph 5 (a-f), are currently located/securely stored at Delaware State Police Troop 2 Evidence Locker, 100 LaGrange Avenue, Newark, Delaware 19702.

8.   The One (1) Black TracFone Wireless Cellphone, Serial Number: 014526008991059, FCC ID: RAD527 seized pursuant to the March 2, 2017 United States District Court, District of Delaware, Search Warrant is currently located/securely stored at ATF Evidence Locker, 1007 North Orange Street, Suite 201, Wilmington, Delaware 19801.

9.   Your Affiant herein sets forth the following facts showing that there are sufficient grounds to believe that the search of the TARGET ELECTRONIC DEVICES belonging to Drew Chicklo will likely be relevant and material to an ongoing criminal investigation.

## THE SPECIFIED FEDERAL OFFENSES

10. In particular, Your Affiant submits that there is probable cause to believe that Drew Chicklo, committed the following federal offenses, among others, and that evidence of the following offenses will be found on the TARGET ELECTRONIC DEVICES located in residence:

a.   Title 26, United States Code, Sections §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c): Possession of Unregistered Firearms; and

b.   Title 18, United States Code, Sections 922(g)(1) and 924(a)(2): Felon in Possession of Ammunition.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

11. As described above and in Attachment A, this application seeks permission to search and

4

seize data that the TARGET ELECTRONIC DEVICES might contain, in whatever form it is stored. Based on Your Affiant's knowledge, training, and experience, Your Affiant knows that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

12. A thorough search of digital media, such as the TARGET ELECTRONIC DEVICES, for evidence or instrumentalities of a crime commonly requires a qualified expert to conduct the search in a laboratory or other controlled environment. This is true for the following reason - searching digital media requires the use of precise, scientific procedures, which are designed to maintain the integrity of the evidence and to recover hidden, erased, compressed, encrypted, or password-protected data. Since such data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential in conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

13. Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, ATF intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

14. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET ELECTRONIC

5

DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET ELECTRONIC DEVICES because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. In Your Affiant's training and experience, these TARGET ELECTRONIC DEVICES have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the TARGET ELECTRONIC DEVICES first came into the possession of law enforcement.

15. Your Affiant knows the TARGET ELECTRONIC DEVICES store various kinds of data in memory. The data stored within this memory can consist of:

a. **Device Settings**: Name of owner / subscriber, serial number, manufacturer information, firmware / hardware information, International Mobile

Subscriber Identity (IMSI) number, International Mobile Equipment Identity (IMEI) number, cell tower location, ringer volume, etc.

b. **Contacts**: Address books including names, phone numbers, etc.

c. **Call Logs**: Received, dialed, missed, call durations, etc.

d. **Messages**: Short Message Service (SMS) messages, Multimedia Messaging Service (MMS) messages, both saved and deleted, etc.

e. **Files**: Images, videos, sounds, documents, ring tones, etc.

f. **Other**: Calendars, reminders, alarm clock settings and deleted content from unallocated space on the Subscriber Identity Module (SIM) card, etc.

16. Your Affiant has been provided the following terms and definitions by the High Technology Crimes Unit of the Delaware State Police to assist in forensic evidence collection as means to understand common words or phrases associated with these examinations.

**Terms and Definitions:**

a. **Hashing** – Hashing, sometimes thought of as an Electronic DNA, refers to the process electronically evaluating computer files and mathematically calculating a "virtual serial number" unique to that file. Using mathematical algorithms, such as the MD5 or SHA32, computer programs "look" at each bit of the file and calculate a numeric weight to provide an aggregate hexadecimal number. If ANY single bit of the file is changed, no matter how slight and no matter how large the file, the Hash Number or "virtual serial number" will be completely different. The permutations of the algorithmic output are so large as to make it impossible for any two files which are not EXACTLY THE SAME to have the same hash result.

b. **Chat** – Chatting is a popular form of instant text messaging by means of computer. Various forms exist but in general, websites hosting chat services establish chat servers (relay computer) using specific chat software applications that users around the Country or around the world may login, type a text message, which upon sending (hitting the enter key) is transmitted to the others using the service to view in near real time.

c. **Chat rooms** – Interest groups – that are groups named for a special interest or hobbies are set up either by the hosting web site or just as often, by member users. Referred to as a room or channel, it is the relative equivalent of a specific interest TV channel such as the history channel or the cooking channel. The difference being that anyone logging into that "room" will find other people interested in the same topic and are able to intercommunicate with the group. All communication in a channel are public and can be viewed by all members within that channel.

d. **IM or PC** – Refers to Instant Messaging or Private Chat. Unlike a chat room, IM or PC is text messaging but occurs only between two individuals and is not seen by others in a chat room. Depending on the software application, a completely separate chat window may be used to facilitate the private messaging between the participants. IM is actually a brand name started by America-On-Line and refers to their proprietary software AOL Instant Messenger. Most chat software has a similar facility for private communications.

e. **Screen Name** – Screen names are, as the term implies, the name that chatters give to themselves for use within the chatroom so that others may contact them without compromising the user's true information and privacy. Screen names are much like vanity plates in that they often are descriptive or clever words which are easily recalled but have some meaning to the person using it. For example, an elderly woman in a Gardeners chat room may call herself TexasRose70 because she is in Texas, likes roses and is 70 years old. While they are fictitious names, they are often traceable to an individual by law enforcement because they are registered with the chat host when the name is created.

f. **File exchanges and video chat** – While using many common chat applications, it is possible for users to send or exchange files, pictures, or other digital data. Likewise, many chat applications include a facility for video chat, which may or may not include audio transmissions. By combining

8

text, video and audio, users are able to read, hear and see other persons within the room or within private messaging.

g. **Chat Applications** – Many programs have been developed and are available for free or at minimal cost to achieve interconnection of computers allowing chat. IRC or internet relay chat is a specific type which uses a large number of servers around the world and is largely unregulated since it is not actually owned by a group or company. AOL-IM, Yahoo Chat, MSN Messenger, and MS Net Meeting are just a few of the common applications. There are also Java script based web-chats that are found on various websites.

h. **Cookies** – Small Data files that are used by internet browser software to help in the navigation of the internet. They may be placed on a computer at the time a person first looks at a particular website, or they may be placed on the local computer for a single session. They often store user selected preferences, but may also collect data about the local computer.

i. **Data** – Electronically stored information which may consist of files, collections of files, programs, or applications, or varying amounts of all. Data is what the user interacts with on their computer monitor, but just as often, the electronically stored data is never seen by the user.

j. **Dial-Up** – One type of connectivity where in a person wanting to browse the internet, utilizes a modem and software to literally "Dial-Up" another computer provided by an Internet Access Provider. Dial-Up modems generally the slowest communication device, but they are also the most common, using ordinary telephone lines to allow Internet Access to the user.

k. **Files, Folders and storage of Data** – Data that is "saved" on a computer system is always held in a hierarchical electronic filing system. The data that makes up what the end user sees on the screen as files (a single item) or a folder (a collection of files). The user can, in some cases, be prompted to offer names for data they save, and to save them in specific locations within the virtual filing system. The computer however, determines where on the physical drive the files will actually be stored on the physical media. Some

files the user has no control over, and they save or delete themselves according to pre-programmed instructions and commands.

l. **Hard Drives and Storage Media** – Hard drives refer to mass volume storage media that allow electronic data to be written to and stored on the hard (non flexible) disk or disks that are contained inside a structural protective casing. Electronic storage media however, come in many other forms, including 3 ½" diskettes which have low volume capacity but are highly transportable, to DAT (Digital Audio Tape) Compact Disks, and DVD's. Whatever the form, they all have the singular purpose of capturing electronic data written to their surface, for safe retrieval at a later time.

m. **High Speed Access** – Also referred to as High Bandwidth, High-speed access systems come in several varieties, most common to home or residential service are DSL, Cable, and Satellite. DSL (Digital Subscriber Line) is provided via telephone line, Cable, as the name implies uses Cable Television systems, and satellite is provided by Satellite TV systems such as Direct TV. High Speed is measured in comparison to Dial-up services which operate at maximum transfer speeds of 56Kb (56,000 bits per second). DSL advertise speeds of 1.5 Million bits per second (which has an effective throughput of about 350,000 bits per second) and Cable claims speeds of 3 million bits per second but in reality has an effective throughput much closer to DSL. This means that file sharing and transfer, including web browsing and video viewing is much easier, faster, and smoother than the old dial-up services.

n. **Internet/Computer Networks** – The Internet, like all networks, is a compilation of computers, all interconnected, to allow users access to some or all of the data stored on one computer in the system from any other computer in the system. The internet is not an actual entity, as it is continuously adding and removing computer systems, and it is not controlled or owned by anyone person or entity. The internet is a basically infinite concept, where basic rules for intercommunication are agreed upon so that computers can be standardized. A Local Network, such as those found in offices, is privately

10

owned (as a rule), they are controlled by their owners (administrators), and access is restricted to a finite number of people (as a rule).

o. **IP Address** – IP refers to an Internet Protocol, or a specific recognition locator number assigned by computers to computers, so that they may effectively communicate via the internet. This number or range of numbers, are assigned to a domain when that domain is registered. There are several types of IP Numbers (i.e. Dynamic or Static) but in the end, they identify the computer or the computer system to the rest of the network.

p. **I.S.P – Internet Service Provider:** This is the commercial retailer who permits access to the internet by renting out the IP's and domain access that they have purchased and registered. ISP includes companies such as AOL, Earthlink, and other such services.

q. **Modems** – One type of communication device found in many small computer systems that allows interconnectivity and communications with other computer systems.

r. **Password/Access** – Passwords are methods of controlling network access. Most systems restrict access to their system and by allowing passwords, they can control level of access rights (certain user name/passwords combinations have greater or lesser amounts of access) as well as preventing non-users from accessing their system at all. Passwords do not insure access in that a computer can be exploited by those with enough knowledge and desire. Passwords almost always work in conjunction with a "User ID which is not necessarily kept secret.

s. **Yahoo Avatar-**Yahoo! Avatars allows users to create personalized character images, also known as avatars, which are displayed on Yahoo! Messenger and the user's Yahoo! 360° profile.

17. Your Affiant has been advised by the High Technology Crimes Unit of the Delaware State Police of the following information to address possible issues of staleness associated with computers, PDA, cellular telephones, notepads, tablets, electronic organizers, electronic devices investigations where the information relating to crimes may in some cases be perceived as old. Staleness issues typically preclude obtaining

11

search warrants based on information, which is subjectively too old to insure that the evidence sought will likely, still be found in the place to be searched.

    a. Computers/electronics devices store vast amounts of data and based on their training and experience, Examiners assigned to the High Tech Crimes Unit can state that Data continues to reside on hard drives for months and even years after it is initially written to media. With the advent of larger capacity hard-drives, removable media, and CD/DVD burners over the past several years, the retention and therefore recovery of, data from digital media has greatly increased.

    b. Larger hard-drives, those having capacities of 30 to 400 gigabytes (giga = billion) are standard installations on computers. Typical home users often fill a relatively small portion of the drives over the entire period it is in service. Drive space is referred to as Allocated and Unallocated or Free space. Allocated refers to space occupied by live files and system resources. Unallocated or Free Space refers to space NOT currently being used, which is available or waiting to accept new data. When a file is "deleted" by the user, that space becomes "Free" and is available to accept more data. Likewise, space at the end of the drive, which is generally very large, that has never been intentionally used for storage, is referred to as Free Space. Unknown to most users however, data almost always can be found in those areas and can be forensically recovered years after it was written.

    c. Newer technology allows users with very little computer/electronic device knowledge to write data to various forms of Long Term Storage Removable Media. These may include DVD (Digital Video Disks) and CD (Compact Disks). Both DVD and CD are easily hidden in relatively small areas. Despite the names implication, a DVD can and does accept digital data other than video; likewise, compact disks which are normally thought of as being associated with music and audio files can and do store digital data other than audio. The data stored on them is highly stable and not usually subject to corruption barring physical damage to the media itself. For that reason, computer users often "back-up" files to these forms of media making them

available recovery many years after being written. Users engaged in criminal activity use these same media to store the fruits and evidence of their crimes because they are easily concealed and not as subject to inadvertent discovery by others in a household or business who may have access to the computer or computer system.

d.  New technology for Removable Media such as Pen Drives (very miniature USB devices sometimes called thumb drives), Compact Flash Cards, Digital Media Cards, and other similar media used in digital cameras, are designed to accept and store data in some cases up to 1 gigabyte. This is a huge amount of data that can literally be hidden inside of a matchbook. These media type are somewhat more volatile than CD or DVD, but still can and do retain data for extremely prolonged periods of time.

## PROBABLE CAUSE TO SEARCH TARGET ELECTRONIC DEVICES

18. Your Affiant knows that on February 24, 2017, members of the Delaware State Police Troop 2, Major Crimes Unit, arrested Drew R. Chicklo for Possession, Purchase, Ownership, or Control of a Deadly Weapon by a Person Prohibited due to a felony, Possession of a Firearm not registered under the National Firearms Registration and Transfer Record.

19. Your Affiant knows that on or about February 23, 2017, Delaware State Police Troop 2 Patrol Units responded to 1716 South College Avenue (SR 896) Newark, DE in reference to an unknown subject firing rounds into their residence.

20. Detectives observed a total of 23 apparent bullet holes in the exterior of the 1716 South College Avenue and 7 lead projectiles were recovered from the residential structure.

21. Utilizing a trajectory rod (graph inserted in this paragraph), detectives were able to determine that the rounds originated from the top of a dirt berm (Letter "B" on graph) located to the east of 1716 South College Avenue (far left of the page of graph) on the northbound side of SR 896.

13



1716 South College Avenue

22. Detectives responded to the area of the berm indicated by the trajectory rod in an attempt to locate evidence associated with the firing of a weapon. At this berm, detectives located a metal plate, approximately 12-16 inches in size, with a damaged, paper target attached (Letter "B" on graph in ¶20). In their training and experience, officers recognized the damage as consistent with being struck by projectiles fired from a firearm.

23. After finding this target, the detectives knew, from their training and experience and the trajectory rod, that the projectiles were fired from a location further east of the berm. Canvassing the projected source of the projectile firing, detectives observed an open, second-floor window of a residence with no screen in the frame. This same window had damage to the lower frames. Through the detectives' training and experience, this damage to the metal frame of the window was consistent with the firing of projectiles within the residence towards the dirt berm.

24. After canvassing the area, utilizing the trajectory rod and determining that there were no other residences or structures that obstruct the path of a projectile fired from 822 Cobble Creek Curve (Letter "A" on graph in ¶20), detectives determined that the projectiles were being fired from the second floor window of the residence located at 822 Cobble Creek Curve, Newark, DE 19702.

14

25. Delaware State Police were able to determine, through New Castle County Parcel Search, that the listed residential owner of 822 Cobble Creek Curve, Newark, DE is Drew Chicklo.

26. Chicklo is currently on Supervised Release by the United States Probation and Parole for the District of Delaware for his 2013 felony convictions of Possession of Unregistered Firearms and Felon in Possession of a Firearm.

27. On February 24, 2017, the Delaware State Police executed a Delaware Justice of the Peace search warrant at 822 Cobble Creek Curve, Newark, DE 19702 at approximately 1:08 p.m.

28. During the search of the 822 Cobble Creek Curve, numerous spent shell casings consistent with being fired were located throughout the residence, second floor bedrooms, second floor hallway, living room, and basement. Officers were able to confirm a clear line of sight between the upstairs bedroom window and the berm containing the target.

29. Located within the living room of the residence was a green storage box. Located inside the storage box were firearm accessories and a Black Dog Machine LLC X-Form .22 caliber rifle magazine. The magazine was loaded with 6 rounds of .22 caliber ammunition.

30. Located and collected in the master bedroom of the residence were three rounds of .22 caliber ammunition.

31. The TARGET ELECRONIC DEVICES listed in Paragraph 5 (a-f, and h-j) were also located in this residence during lawfully executed search warrants. At the time of the execution of the warrants, CHICKLO was the sole owner and occupant of the residence.

32. Your Affiant knows that the ammunition seized in this investigation, specifically Remington, CCI, and Winchester, determined by the Headstamp Identifications, were not manufactured in the State of Delaware therefore such possession in Delaware would have necessarily required that the firearms had crossed state lines prior to its possession in Delaware and affected interstate commerce.

33. Your Affiant reviewed the computer criminal history information for Chicklo from the National Crime Information Center (NCIC), and confirmed Chicklo was convicted of felony charges, including Possession of Unregistered Firearms and Felon in Possession of a Firearm in the United States District Court for the District of Delaware on April 24, 2013.

34. On February 28, 2017, the New Castle County Police were dispatched to 822 Cobble Creek Curve, Newark, DE 19702 in reference to a 911 call from Drew Chicklo's mother.

35. Chicklo's mother advised that she needed to get into Chicklo's vehicle, an older model Acura, which he parks within the development. She stated that her son, Chicklo, hides items within the vehicle and buries items in a dirt lot off of Delaware State Route 896. She stated she knows Drew Chicklo possesses guns and he even asked her to buy him a gun. Chicklo's mother advised that Chicklo called her from prison and told her to move the vehicle so it did not get towed.

36. New Castle County Police located the vehicle in the area of 120 Cobble Creek Curve, Newark, DE 19702. Chicklo's mother confirmed that the vehicle, a 1992 Acura TL, bearing DE 73323, was her son's vehicle. United States mail addressed to Drew Chicklo was located in plain view in the back of the vehicle.

37. An inquiry revealed that, on July 16, 2016, Chicklo was stopped operating this vehicle and given traffic citation T021607172 for Expired Tags.

38. An inquiry also revealed advised the previous owner of this vehicle transferred the registration on April 19, 2016 as documented by Delaware Motor Vehicle.

39. On March 2, 2017, a United States District Court for the District of Delaware search warrant was issued for the car. Officers executed the search warrant and located a golf bag in the truck containing the following:

   a. Three "lower" AR-15 rifle type receivers;

   b. Two "upper" barrels less than 16 inches;

   c. Two homemade silencers; and

   d. 929 rounds of ammunition

40. Additionally, officers located and seized One (1) Black TracFone Wireless Cell Phone, Serial Number: 014526008991059, FCC ID: RAD527 from the 1992 Acura.

41. On March 9, 2017, Your Affiant swore out an Affidavit of Probable Cause for a Search Warrant for the TARGET ELECTRONIC DEVICES listed in Paragraph 5 (a)-(g). Your Honor signed this search warrant on March 9, 2017. Out of an abundance of caution, the warrant was unexecuted pending further investigation into the defendant's actual use of the TARGET ELECTRONIC DEVICES in furtherance of the specified federal offenses.

42. On May 25, 2017, TFO Popp conducted an interview with a cooperating individual (herein referred to as "CI"). CI advised that he/she has personal knowledge of CHICKLO and his illegal involvement with possessing and manufacturing of firearms. CI advised he/she

16

communicated with CHICKLO through phone calls and text messages, sometimes on a daily basis. CI advised CHICKLO would access websites for firearm parts using his cell phone and personal computer located within his residence. CI stated CHICKLO utilized video surveillance cameras on the exterior residence, which utilized memory banks. These images were captured and saved on data devices located within the residence. CI advised that while in the residence, he/she observed these surveillance images on a TV in the basement and a TV in the living room at 822 Cobble Creek Curve, Newark, Delaware 19702.

## CONCLUSION

43. In this particular case, based on the facts set forth in this affidavit, Your Affiant believes that there is probable cause to believe that the TARGET ELECTRONIC DEVICES may contain information, location, and identity of illegal firearms, as well as electronic messages related to firearm transactions. In addition, these TARGET ELECTRONIC DEVICES may contain records of contacts between Chicklo and any co-conspirators involved with the illegal firearms at Chicklo's residence and in his car. Moreover, these TARGET ELECTRONIC DEVICES may have captured video and or photographs of possible firearm use, co-defendants, or transactions involving firearms, including global positioning system (GPS) technology for determining the location of the devices, which could also assist law enforcement in finding additional transactions between Chicklo and others.

44. Based on Your Affiant's training and experience and the facts set forth in this affidavit, Your Affiant believes there is probable cause that the items set forth in Attachment A, constitute evidence, fruits, and instrumentalities of violations 26 U.S.C. §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c) (Possession of Unregistered Firearms), and 18 U.S.C. § 922(g)(1) and 924(a)(2) (Felon in Possession of Ammunition).

Christopher W. Popp, Task Force Officer
Bureau of Alcohol, Tobacco & Firearms

Sworn to and subscribed in my presence
this 21st day of June, 2017.

HONORABLE SHERRY R. FALLON
United States Magistrate Judge
District of Delaware

17

## **ATTACHMENT A**

### **DESCRIPTION OF ITEMS TO BE SEARCHED**

Application for a Search Warrant to search the contents of the following TARGET
ELECTRONIC DEVICES:

  a.  One (1) Black ZTE Model Z833, Serial Number 325166771611,
      IMEI:862147031754563, FCC ID: SRQ-Z833, located on and seized from the floor
      of the kitchen closet on February 24, 2017 at 822 Cobble Creek Curve, Newark,
      Delaware 19702 pursuant to a Justice of the Peace Search Warrant dated February 23,
      2017;

  b.  One (1) Black Cricket Alcatel Onetouch Cell Phone, Unknown Serial Number with a
      Chrome-Colored Unremovable Battery, located and seized from the living room table
      at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a Justice of the
      Peace Search Warrant dated February 23, 2017;

  c.  One (1) Silver Dell Dimension E510 Computer, Serial Number 3FSWBB1, located
      and seized from the rear master bedroom at 822 Cobble Creek Curve, Newark,
      Delaware 19702 pursuant to a Justice of the Peace Search Warrant dated February 23,
      2017;

  d.  One (1) Western Digital 2.0 TB Hard Drive, Serial Number WCAVY1428274, Model
      Number: WD2002FYPS-01U1B1, located and seized from the front bedroom at 822
      Cobble Creek Curve, Newark, Delaware 19702 pursuant to a Justice of the Peace
      Search Warrant dated February 23, 2017;

  e.  One (1) Magnetic Data Technologies 400.0 GB Hard Drive, Serial Number
      MCAS84004172, Model Number MD04000-BJDW-RD, located and seized from the
      front bedroom at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a
      Justice of the Peace Search Warrant dated February 23, 2017;

  f.  One (1) Black Infinitive High Performance SDHC 16.0 GB Memory Card, located
      and seized from the front bedroom at 822 Cobble Creek Curve, Newark, Delaware
      19702 pursuant to a Justice of the Peace Search Warrant dated February 23, 2017;

  g.  One (1) Black TracFone Wireless Cell Phone, Serial Number: 014526008991059,
      FCC ID: RAD527, seized on March 2, 2017 from a 1992 Acura TL bearing VIN

#JH4KA766XNC034820 pursuant to a United States District Court, District of Delaware, Search Warrant dated March 2, 2017;

h. One (1) Black Compaq Presario laptop, Serial Number: CNF021158Z, located and seized from the master bedroom at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to United States District Court for the District of Delaware search warrant issued by Magistrate Sherry R. Fallon on March 9, 2017;

i. One (1) Black WD Passport Storage Unit, Identification Card Absent, located and seized from behind the television screen in the master bedroom at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a United States District Court for the District of Delaware search warrant issued by Magistrate Sherry R. Fallon on March 9, 2017; and

j. Three (3) SIM Cards located in a brown box in the front bedroom at 822 Cobble Creek Curve, Newark, Delaware 19702 pursuant to a United States District Court for the District of Delaware search warrant issued by Magistrate Sherry R. Fallon on March 9, 2017 (herein, collectively, the "TARGET ELECTRONIC DEVICES").

## ATTACHMENT B

1. All data contained in the TARGET ELECTRONIC DEVICES that relates to any fruits, evidence and/or instrumentalities of violations of Title 26, United States Codes Sections §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c), and Title 18, United States Codes, Sections 922(g)(1) and 924(a)(2) from May 6, 2016 through March 1, 2017.

2. Any and all names, telephone numbers, user names, email or instant messenger addresses, screen names or other identifying information stored in the TARGET ELECTRONIC DEVICES that relates to any fruits, evidence and/or instrumentalities of violations of Title 26, United States Codes Sections §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c), and Title 18, United States Codes, Sections 922(g)(1) and 924(a)(2) from May 6, 2016 through March 1, 2017.

3. Any and all names, telephone numbers, user names, email or instant messenger addresses, or other identifying information for persons contacted by the TARGET ELECTRONIC DEVICES that relates to any fruits, evidence and/or instrumentalities of violations of Title 26, United States Codes Sections §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c), and Title 18, United States Codes, Sections 922(g)(1) and 924(a)(2) from May 6, 2016 through March 1, 2017.

4. Any and all images, pictures, photographs, videos or other visual depictions sent, received by, or stored in the TARGET ELECTRONIC DEVICES that relates to any fruits, evidence and/or instrumentalities of violations of Title 26, United States Codes Sections §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c), and Title 18, United States Codes, Sections 922(g)(1) and 924(a)(2) from May 6, 2016 through March 1, 2017.

5. The content of any and all text messages sent, received by, or stored in the TARGET ELECTRONIC DEVICES that relates to any fruits, evidence and/or instrumentalities of violations of Title 26, United States Codes Sections §5861(d),

5871, and 5845 (a)(3), (a)(7) and (c), and Title 18, United States Codes, Sections 922(g)(1) and 924(a)(2) from May 6, 2016 through March 1, 2017.

6. The content of any and all e-mails sent, received by, or stored in the TARGET ELECTRONIC DEVICES that relates to any fruits, evidence and/or instrumentalities of violations of Title 26, United States Codes Sections §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c), and Title 18, United States Codes, Sections 922(g)(1) and 924(a)(2) from May 6, 2016 through March 1, 2017.

7. The content of any and all voice mail messages stored on the TARGET ELECTRONIC DEVICES that relates to any fruits, evidence and/or instrumentalities of violations of Title 26, United States Codes Sections §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c), and Title 18, United States Codes, Sections 922(g)(1) and 924(a)(2) from May 6, 2016 through March 1, 2017.

8. Any and all evidence of passwords needed to access the TARGET ELECTRONIC DEVICES that relates to any fruits, evidence and/or instrumentalities of violations of Title 26, United States Codes Sections §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c), and Title 18, United States Codes, Sections 922(g)(1) and 924(a)(2) from May 6, 2016 through March 1, 2017.

9. Any electronic calendars, notes, task lists or other information relating to any person's whereabouts or activities relevant to violations of federal firearms laws located in TARGET ELECTRONIC DEVICES and which relates to any fruits, evidence and/or instrumentalities of violations of Title 26, United States Codes Sections §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c), and Title 18, United States Codes, Sections 922(g)(1) and 924(a)(2) from May 6, 2016 through March 1, 2017.

10. Evidence showing the historic physical locations of the TARGET ELECTRONIC DEVICES that relates to violations of federal firearms laws, including but not

limited to any fruits, evidence and/or instrumentalities of Title 26, United States Codes Sections §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c), and Title 18, United States Codes, Sections 922(g)(1) and 924(a)(2) from May 6, 2016 through March 1, 2017.

11. Evidence of user attribution showing who used or owned the TARGET ELECTRONIC DEVICES at the time data contained therein was created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history that relates to any fruits, evidence and/or instrumentalities of violations of Title 26, United States Codes Sections §5861(d), 5871, and 5845 (a)(3), (a)(7) and (c), and Title 18, United States Codes, Sections 922(g)(1) and 924(a)(2).